## BENJAMIN GREEN *et al.*

*v.*

## AMELIA HEWITT *et al.*

*Filed at Springfield November 26, 1880.*

WILL—*whether a life estate or in fee.* A clause in a will: "Second. After the payment of such debts and funeral expenses, I give and bequeath to my beloved wife, E. T., the farm on which we now reside, situate, etc.; also, all my personal property of every description, so long as she remains my widow; at the expiration of that time the whole, or whatever remains, to descend to my daughter, M. T.," was *held* to pass a life estate only to the widow, both in the real and personal estate, subject to being terminated by her marriage, and that the daughter took a vested remainder, and not a contingent one. The words "whatever remains" were held to apply only to the personalty which might be consumed, or lost, etc.

WRIT OF ERROR to the Circuit Court of Scott county; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill in chancery, filed in the Scott county circuit court on the 12th day of December, 1878, by plaintiffs in error, against Amelia Hewitt, Ann Beedham and Sarah Royal, for the partition of certain lands. The bill alleges that Elizabeth Green died intestate on the 14th of November, 1878, leaving her husband, Benjamin Green, and her sisters, Amelia Hewitt, Ann Beedham and Sarah Royal; that at the time of her death Elizabeth Green was seized in fee of the premises mentioned in the bill; that she derived title to the same through the will of William C. Thompson, deceased, who was her former husband; that after his decease she married the said Benjamin Green; that upon the decease of the said Elizabeth Green, without issue, the said Benjamin Green, as surviving husband, became entitled to one-half of said premises, and her surviving three sisters to one-sixth respectively. By an amendment to the bill it was further alleged that the said William C. Thompson, at the time of his death, left him surviving his widow, Elizabeth Thompson,

8—97 ILL.

and Mary Thompson, his only daughter; that after her father's death the said Mary intermarried with Henry Abbott, by whom she had one child, and soon thereafter died, leaving her infant child and her husband, its father, her surviving; that the child survived its mother but a short time, when it died, leaving its father, the said Henry, as its only heir; that after the death of the said Mary Abbott, and her said infant child, the said Elizabeth Thompson was married to the said Benjamin Green, and remained his wife up to the time of her death; that said Abbott, husband of the said Mary Abbott, deceased, and father of her said child, still survives them.

A copy of the will of the said William C. Thompson was annexed to and by reference made a part of the bill.

At the April term, 1879, Henry Abbott, upon his own petition, was admitted without objection as a party defendant to the bill, and thereupon filed a demurrer to the same.

At the October term, 1879, the court, upon argument and due consideration, sustained the demurrer to the bill, and complainants electing to stand by their bill, a decree was thereupon rendered dismissing the same. The defendants being dissatisfied with that decree, have brought the record to this court, and assigned for error the sustaining of the demurrer to the bill.

Mr. OWEN P. THOMPSON, and Mr. JOHN G. HENDERSON, for the plaintiffs in error:

The first clause in the devise, standing alone, in express terms gives to Elizabeth Thompson an absolute fee simple title in the farm. *Brownfield* v. *Wilson,* 78 Ill. 467.

Taking the words, " the whole, or whatever remains," in the second clause, as relating to both real and personal property devised to the wife, they are wholly inconsistent with any estate less than a fee. These words imply an absolute right of disposal in the wife, which carries with it the fee. To show that this power of disposal may be given impliedly,

and that the idea of an unconsumed residue is not countenanced, we refer to the following cases: *Ide* v. *Ide*, 5 Mass. 500; *Jackson* v. *Bull*, 10 Johns. 19; *Jackson* v. *Robbins*, 16 id. 537; *King's Heirs* v. *King's Admrs.* 12 Ohio, 390; *McLean* v. *McDonald*, 2 Barb. 534; *Olney* v. *Hall*, 21 Pick. 311; *Helmer* v. *Shoemaker*, 22 Wend. 137.

Mr. H. CASE, and Mr. J. M. RIGGS, for the defendants in error:

In construing a will, in case of doubt all its parts should be considered together, and if possible give every clause and provision effect according to the true intention of the testator. *Ragland* v. *Markillie*, 77 Ill. 100.

In *Siegwald* v. *Siegwald*, 37 Ill. 430, the language of the will was: "I give and bequeath to my beloved wife, Antonia, all my real and personal estate, wherever situate, in fee simple absolute forever; that is to say, that my wife shall have all the benefits thereof until the expiration of her life, at which time my son, Anton, shall be the only heir of my real or personal estate, *what may be left.*" *Held*, that the widow took only a life estate in the land with a power of sale, with remainder over to the son. See, also, *Brownfield* v. *Wilson*, 78 Ill. 470; *Baker* v. *Copenhagen*, 15 id. 103.

A contingent remainder is an estate limited so as to depend on an event or condition which is dubious and uncertain, and may never happen, or be performed; while a vested remainder is an estate where there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. 4 Kent's Com. 202, 206.

In this case the fee vested in the daughter, subject to the widowhood estate of the mother, and upon the death of the daughter it descended to her child, and upon its death, being the only child, the fee vested in its father.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The whole controversy in this case turns upon the construction to be given to the second clause of the will of

Willian C. Thompson, through which all the parties claim. It is as follows:

"Second. After the payment of such debts and funeral expenses, I give and bequeath to my beloved wife, Elizabeth Thompson, the farm on which we now reside, situate in said county, and known and described as the north-east quarter of the south-west quarter of section seven, township fifteen, range thirteen, also all my personal property of every description, so long as she remains my widow; at the expiration of that time the whole, or whatever remains, to descend to my daughter, Mary Thompson."

Plaintiffs in error insist that under this provision of the will Elizabeth Thompson took an absolute fee simple estate in the premises therein mentioned, which are the same lands now in controversy, and of which partition is sought by complainants' bill. If she did not take an inheritance, as contended, but a mere life estate, as is claimed by defendants in error, then it is clear complainants showed no title to the premises in themselves, and the demurrer to the bill was therefore properly sustained by the court.

To us there seems no room for doubt as to the proper construction of the clause in question. The devise of the farm and personal estate is expressed in a single sentence, one clause of which relating to the land, and another to the personalty. By their punctuation these clauses of the sentence are merely divided by a comma and are connected by the conjunctive adverb "also," which, in that connection signifies *in like manner*, or in addition to; that is, the testator gives and bequeaths the farm, and in like manner gives and bequeaths the personalty. Then follows the qualifying or adverbial clause, "so long as she remains my widow," which is introduced for the purpose of limiting the entire gift, both of personalty and realty, to the widowhood of the taker. He gives and bequeaths both only so long as she remains his widow. This is both the grammatical and legal construction of the sentence. The meaning is precisely the same as if the

testator had said: "I give and bequeath to my beloved wife, so long as she remains my widow, the farm, etc., on which we now reside, and in like manner I give and bequeath to her all my personal estate." She took a mere life estate in the entire gift. The misapprehension as to the legal effect of the devise doubtless grows out of the use of the expression "whatever remains" by the testator, in limiting the remainder to his daughter. The use of that expression is of no vital significance, and can not be permitted to override the clearly expressed intention that the widow should take a life estate only.

As part of the estate devised was personalty, it is but reasonable to suppose that some of it would be of that species of property whose value and use consist solely in its consumption, such as provisions, etc., and it was doubtless the intention and expectation of the testator that property of this character should and would be consumed by his widow, and of course not in existence when her estate terminated. It was also reasonable to suppose that if she lived long as his widow, some of the articles of personalty would be worn out, lost or destroyed; hence, in making the limitation over, it was but natural and proper to use the expression "whatever remains." It had reference to the anticipated condition of the personal estate when it would, under the limitation, pass into his daughter's hands. And this is all the significance the expression has.

It is further claimed by plaintiffs in error that the estate of the daughter was a contingent remainder, and that inasmuch as she died before the the termination of the particular estate which supported it, it never vested at all. Counsel are entirely mistaken in this view. The estate of the daughter had not a single element in it that distinguishes a contingent from a vested remainder. There was certainly no uncertainty as to the person who was to take. It was Mary Thompson, the daughter, clearly. And the time of her taking in possession was equally certain, namely: when

Elizabeth Thompson ceased to be the widow of the testator, whether it was effected by death or a second marriage.

A clearer example of a vested remainder could scarcely be conceived. But admitting, for argument's sake, plaintiffs in error are right upon this question, the admission is certainly fatal to their right of recovery; for, if the daughter took a contingent remainder, of necessity the widow could not have taken a fee, and their right of recovery rests entirely upon the hypothesis that she took a fee simple title under the will.

We are, in any view, clearly of opinion that the decree of the circuit court was right, and it is therefore affirmed.

*Decree affirmed.*