'Argued March 18, reversed and remanded April 20, 1920.

## BILYEU v. CROUCH.

(189 Pac. 222.)

**Wills—Testator's Intent Derived from Instrument Controls.**

1. The rule that the controlling factor in the construction of a will is the determination of the intent of the testator from the instrument is codified in Section 7347, L. O. L.

**Wills—Limitation Over on Death Means Death Before Death of Testator.**

2. Where an absolute estate is devised to be defeated by devisee's death and nothing else is declared as a condition, the estate will become absolute unless the devisee dies before the testator.

**Wills—Death of Beneficiary Held to Defeat Estate Which Passed to Others.**

3. Where a woman devised lands to her two sons and their male heirs, with the provision that if either should die without male heirs the land should pass to their female heirs and in case of death without issue should be divided between the testatrix's two daughters, the daughters on death of the one of the devisees without issue became entitled to the property under the executory devise despite Section 7344, L. O. L., declaring that a devise of real property shall be taken as a devise of all the estate and interest of the testator unless it clearly appears that he intended to devise a less estate.

**Quieting Title—Plaintiffs in Possession Without Title must Account for Rents and Profits.**

4. Where plaintiffs' title ceased on the death of their grantor and an interest in the lands passed to defendant by way of executory devise, defendant's demand on plaintiffs in a suit to quiet title to account to defendant for the rents and profits accruing after death of their grantor was improperly denied.

From Linn: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit to quiet the title of the plaintiffs in the south half of the wife's moiety of the donation land

claim of Charles T. Ingram and Eliza Ann Ingram, his wife, in Linn County, Oregon. The plaintiffs claim to be the owners in fee simple of this tract. They assert title by virtue of mesne conveyances from Frank Ingram. Whatever title the latter had came to him by virtue of the last will and testament of his mother, Eliza Ann Ingram, the third clause of which, and the one principally affecting this litigation, reads as follows:

"I give and bequeath unto my two sons, Frank Ingram and John L. Ingram, and their heirs male of their body, my donation land claim aforesaid, subject to the life estate of my husband, Charles T. Ingram, to be equally divided between them by a line running east and west. My son, Frank Ingram, to have the south half and my son, John L. Ingram, to have the north half of my said donation land claim. But in case the said Frank and John L. Ingram or either of them should die without male heirs, then the said lands shall go to their female heirs, respectively. But in case the said Frank and John L. Ingram or either of them should die without issue, then the said lands bequeathed to them shall be equally divided between my daughters, Anna Ingram and Mary Jane Ingram, and their heirs forever, that is to say: If Frank Ingram should die without issue then his portion, or the south half of said land, shall be equally divided between Anna and Mary Jane Ingram, and if John L. Ingram should die without issue his portion of said land shall be equally divided between Anna and Mary Jane Ingram and their heirs forever."

Eliza Ann Ingram, the testatrix, made the will in question September 11, 1870. She died on November 12, 1888. Her husband, Charles T. Ingram, survived her and died June 14, 1889. The first clause of her will gave to her husband the sole use of her half of the donation land claim mentioned, during his natural life. Anna Ingram, the daughter of the testatrix, referred

to in the quoted third clause, intermarried with James Crouch and died December 31, 1892, leaving the defendant Chester Crouch, her son, the sole issue of her marriage. Frank Ingram died November 8, 1915, never having married and never having had any children. James Crouch, the husband of Anna Ingram, disclaims all interest in the realty involved, but Chester Crouch traversed the complaint in material particulars, besides asserting title in himself. The issue to be determined arises between the plaintiffs and Chester Crouch. From a decree of the Circuit Court on these admitted facts, to the effect that the plaintiffs are the owners in fee simple of the real property mentioned and the whole thereof, and that the defendants have no right, title or interest of any kind therein the defendant Chester Crouch appealed .

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Hill & Marks,* with an oral argument by *Mr. Gale S. Hill.*

For respondents there was a brief and an oral argument by *Mr. James R. Wyatt.*

BURNETT, J.—Substantially, the contention of the plaintiffs is that the condition in the will to the effect that, if Frank Ingram should die without issue, then the land bequeathed to him should be equally divided between the daughters of the testatrix, Anna and Mary Jane Ingram, and their heirs forever, refers to the death of Frank Ingram occurring prior to the death of the testatrix. The defendant maintains that the language refers to the demise of Ingram at any time,

whether before or after that of his mother, who made the will.

Eliza Ann Ingram owned a fee-simple estate in the land as the donee of the United States government. It is said in Section 7344, L. O. L.:

"A devise of real property shall be taken and deemed as a devise of all the estate or interest of the testator therein subject to his disposal unless it clearly appears from the will that he intended to devise a less estate or interest."

Claiming a fee-simple estate in the land and deraigning their title from Frank Ingram under the circumstances already mentioned, it is incumbent upon the plaintiffs to show that he took a fee simple, the highest estate a man can have in lands, for their title cannot rise higher than its source.

1, 2. The parties are agreed, and it is not necessary to cite precedents in support of the proposition, that the controlling factor in the calculation is the intent of the testatrix, to be derived from a careful examination of her testamentary declaration. This is codified in Section 7347, L. O. L. The authorities are uniform to the effect that where an absolute estate is devised to an individual to be defeated by his death, and nothing else is declared as a condition, his decease must be considered as one happening before that of the testator. The divergence of precedents occurs when some qualification is attached to the certain event of the death of the devisee. The authorities are multitudinous on both sides of this question, and, as many other courts have declared, we will not attempt to distinguish or reconcile them.

3. It has been said that no will has a twin brother, and these numerous precedents are varied and affected by the peculiar provisions of the will under considera-

tion in each particular case. In this state the question has been foreclosed by the early decision of *Rowland* v. *Warren,* 10 Or. 129. There the testator bequeathed certain realty to his youngest daughter, Mary E. Hembree, "to her and her body heirs forever," and by a later clause in the will declared:

"I further will that if my daughters Martha Ann and Mary E. Hembree die without children, the land shall revert back to my other heirs."

Mary E. married and died leaving three living children. During her married life an execution on a judgment against her was levied upon the land devised to her, and Warren bought the land at the execution sale, which was confirmed to him and a deed was issued by the sheriff in pursuance thereof. After the death of Mary E., her children brought suit to remove the cloud which they predicated on those proceedings, but the court held that the contingency defeating her estate did not happen, and hence the sale conveyed to the defendant a fee-simple title. The inference to be drawn from this opinion conversely would be, that if she had died without children, or, in the words of the will, "her body heirs," the estate devised to her would have been defeated.

Substantially the same conclusion was reached in *Love* v. *Walker,* 59 Or. 95 (115 Pac. 296). The will of Lewis Love divided his property into seven parts, one of which he gave, devised and bequeathed to his son Green C. Love. By a later codicil he said:

"I hereby will, decree and declare that the devise or legacy in my said will, to my son, Green C. Love, shall be for his sole and separate use, independent of his wife, at all times, and that in case of his death without lawful issue, born alive and living at the time of his death, then the said devise or legacy to him shall belong

and go [to] the remaining devisees of my said will in proportion as they hold of the shares or parts of my said will.''

In a suit by Green C. Love to quiet his title to the property after the death of his father, Lewis Love, it appeared that he had two grandchildren living, as well as his wife, his children being all dead. In the opinion by Mr. Justice MOORE the majority of the court construed the will so as to confer upon Green C. Love a life estate in the property. Arguing on the basis adopted in that case by the majority of the court, it would seem to the writer that the estate cast upon Green C. Love by the will of his father and the codicil would be more accurately described as a defeasible fee conditioned upon his dying leaving surviving him issue of his body, and without leaving a widow. But as applied to this case, the opinion there is authority for the doctrine that his estate in fee was defeated by the events happening after the death of the testator.

In *Britton* v. *Thornton*, 112 U. S. 526, 532 (28 L. Ed. 816, 5 Sup. Ct. Rep. 291, 294), it was held in an opinion by Mr. Justice GRAY that:

''It is equally clear that upon her death under age and without issue then living, her estate in fee was defeated by the executory devise over. When indeed a devise is made to one person in fee, and 'in case of his death' to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent has led the courts to interpret the devise over as referring only to death in the testator's lifetime. * * But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated,

at any time, whether before or after the death of the testator.''

In that case the devise over was to Eliza Ann Thornton, provided that "should the said Eliza Ann die in her minority, and without lawful issue then living, the land hereby devised shall revert and become a part of the residue of my estate hereinafter disposed of." It thus appears that the testatrix in the instant case, although seised of a fee-simple estate in the land, devised to her immediate beneficiaries a less estate. We note first the life estate to her husband; second, to Frank Ingram and the heirs male of his body; third, in default of male children, to his daughters; and lastly, in default of issue of his body, to his sisters. It was plain that the testatrix never intended that her son Frank should take an absolute fee-simple estate in the land. It is manifest that she intended to control the stream of descent as it affected the land, long after her death. This is shown by the fact that she interposed a life estate of her husband, which would not come into existence until after her decease and which should be fulfilled before Frank Ingram could come into the enjoyment of the property. Dying without issue, he failed to fulfill the conditions upon which his estate depended. It became a case of possibility of issue extinct. Hence, his death cast the remainder as an executory devise upon his sisters and, in the language of the will, "their heirs forever." The defendant Chester Crouch comes within this category as the sole heir of his mother, Anna Ingram, respecting an undivided half of the south half of the claim of the testatrix. The decree of the Circuit Court will be reversed and one will be entered here declaring Chester Crouch to be the owner in fee simple of an undivided

half of the south half of the north half of the donation land claim of Charles T. Ingram and Eliza Ann Ingram, his wife.

4. The answer of the defendant in the Circuit Court by appropriate averments called upon the plaintiffs to account for the rents, issues and profits accruing after the death of Frank Ingram. The Circuit Court sustained a demurrer to that answer and hence ignored the demand for an accounting. This was erroneous, and therefore the cause will be remanded to the Circuit Court, with directions to permit the parties to frame. an issue respecting the accounting as it affects the rents, issues and profits of the land accruing after the death of Frank Ingram, and proceed to the trial of the issue thus framed.          REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON, J., concur.

HARRIS, J., concurs in the result.